IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| JEANNE H. SOLTES, Individually as Surviving Spouse of Bryan M. Soltes; as Parent and Next Friend of D.S., a minor and Surviving Daughter of Bryan M. Soltes; and as Personal Representative of The Estate of Bryan M. Soltes<br>35 Sierra Drive<br>Califon, New Jersey 07830<br><br>and<br><br>GRACE E. SOLTES, Surviving Daughter<br>35 Sierra Drive<br>Califon, New Jersey 07830<br><br>and<br><br>ABIGAIL E. SOLTES, Surviving Daughter<br>35 Sierra Drive<br>Califon, New Jersey 07830<br><br>and<br><br>JOHN R. SOLTES, Surviving Father<br>76 Stanley Street<br>Dumont, New Jersey 07628<br><br>and<br><br>TERESA SOLTES, Surviving Mother<br>76 Stanley Street<br>Dumont, New Jersey 07628<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA<br><br>Serve On:<br>U.S. Department of Health and Human Services<br> Office of General Counsel<br>200 Independence Avenue, SW.<br>Suite 737F | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Case No. _____ |

1

| | |
|---|---|
| Washington, D.C. 20201 | : |
| Attn: Sean R. Keveney | : |
| Acting General Counsel | : |
| | : |
| and | : |
| | : |
| Kelly O. Hayes | : |
| United States Attorney | : |
| 6406 Ivy Lane | : |
| Suite 800 | : |
| Greenbelt, MD 20770 | : |
| | : |
| and | : |
| | : |
| Pam Bondi | : |
| Attorney General | : |
| U.S. Department of Justice | : |
| 950 Pennsylvania Avenue, NW | : |
| Washington, D.C. 20530 | : |
| | : |
| Defendant. | : |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

Come now the Plaintiffs, JEANNE H. SOLTES, Individually as Surviving Spouse of Bryan M. Soltes, and as Parent and Next Friend of D.S., a minor and Surviving Daughter of Bryan M. Soltes; and as Personal Representative of The Estate of Bryan M. Soltes; and GRACE E. SOLTES, Surviving Daughter of Bryan M. Soltes; ABIGAIL E. SOLTES, Surviving Daughter of Bryan M. Soltes; JOHN R. SOLTES, biological father of Bryan M. Soltes; and TERESA SOLTES, biological mother of Bryan M. Soltes; by and through their attorneys, Gregory K. Wells, Esquire, Andrew J. Hall, Esquire and Shadoan, Michael & Wells, LLP, and for causes of action state:

### **FACTS COMMON TO ALL COUNTS**

1. The amount of this claim exceeds the jurisdictional limit, and venue is proper in the United States District Court for the District of Maryland. The matter arose in Bethesda, Montgomery County, Maryland. This action arises under the Federal Tort Claims Act (28

U.S.C.S. § 2671, *et seq.*). The United States District Court for the District of Maryland has jurisdiction under the provisions of 28 U.S.C.S. § 1346(b).

2. The Plaintiffs are Jeanne H. Soltes, Individually as Surviving Spouse of Bryan M. Soltes; as Parent and Next Friend of D.S., a minor and Surviving Daughter of Bryan M. Soltes; and as Personal Representative of The Estate of Bryan M. Soltes; and Grace E. Soltes, Surviving Daughter of Bryan M. Soltes; Abigail E. Soltes, Surviving Daughter of Bryan M. Soltes; John R. Soltes, biological father of Bryan M. Soltes; and Teresa Soltes, biological mother of Bryan M. Soltes.

3. This is a medical malpractice case involving the negligent failure to timely address and timely surgically treat an intra-operative injury to Decedent Bryan M. Soltes' spleen which led to significant bleeding from his spleen during surgery at National Institutes of Health ("NIH") in Bethesda, Maryland. All of the above events occurred at NIH beginning on April 17, 2024, through April 28, 2024, when Bryan Soltes died.

4. A Form 95 claim which is incorporated herein by reference was presented to the United States Department of Health and Human Services, Office of General Counsel, 200 Independence Avenue, SW., Suite 737F, Washington, D.C. 20201 (as well as the United States Attorney for the District of Maryland and the Attorney General of the United States). The Form 95 claim was brought within the two year statute of limitations. 28 U.S.C § 2401. No action was taken on said claim and the statutory six (6) month administrative period has concluded. Plaintiffs then filed a Statement of Claim, incorporated herein by reference, with the Health Claims Arbitration Office of Maryland, HCA No. 2026-018, and subsequently filed an Election to Waive Arbitration pursuant to Maryland Code Annotated, Courts & Judicial Proceedings, § 3-2A-06B. The Order of Transfer was signed on February 9, 2026.

5. Mr. Soltes was a 48-year-old male with primary medical history of OSA on CPAP, DVT, atrial fibrillation, HTN, DM, CHF, and von Hippel-Lindau (VHL) syndrome. He was diagnosed with VHL in 1995 with the following manifestations: cerebellar and spinal hemangioblastomas s/p craniotomy (2016) and laminotomy (2001), pancreatic neuroendocrine tumor s/p Whipple procedure (2001), pheochromocytoma s/p right partial adrenalectomy (2001), retinal hemangiomas s/p laser photocoagulation, and renal cell carcinoma s/p left and right partial nephrectomies (last in 2020). He had been taking Belzutifan, which apparently had been stopped prior to the surgery at issue.

6. In February 2024, Mr. Soltes underwent an MRI of the brain and spine which, per Neurosurgery, was stable. Imaging in February 2024 which showed increasing bilateral renal lesions suspicious for renal cell carcinoma, and a left adrenal nodule concerning for aldosteronoma vs. pheochromocytoma. He was started on prophylactic blockade with Phenoxybenzamine 10 mg BID and Metyrosine 250 mg TID. Mr. Soltes underwent pre-operative evaluation for the planned surgery. The pre-operative cardiac workup on April 16, 2024, revealed cardiovascular risk factors of prior heart failure, atrial fibrillation, hypertension and renal insufficiency.

7. Bryan Soltes was admitted to the National Institutes of Health Clinical Center on April 17, 2024, for the first stage of a bilateral partial nephrectomy which included a left open partial nephrectomy and left partial adrenalectomy. A left open radical nephrectomy, left open partial adrenalectomy, diaphragm repair, cystoscopy and left ureteral catheter placement was performed by Mark Ball, M.D., a urologic surgeon, who was assisted by Alexander Kenigsberg, M.D., and Briana Goddard, M.D. on April 18, 2024.

8. During the surgery, the left kidney was noted to be "densely adherent to the spleen." Decapsularization of the spleen was also noted. Hemostatic agents as well as packing were used

to address the splenic bleeding. The kidney was also noted to be "densely adherent to the diaphragm and diaphragmatic entry…." Identification of the tumors was described as "challenging given the entire kidney appeared to be replaced with cysts or tumor." Because Mr. Soltes began experiencing some hemodynamic instability and given the limited normal kidney that was amenable to saving, the decision was made to proceed with radical nephrectomy.

9. After removal of the kidney and excision of a small mass on the left adrenal gland, the diaphragmatic entry was addressed. As attention was turned to the injured spleen, continued bleeding was noted. General surgery was called in to assist with the splenic bleeding. The posterior surface of the spleen was initially packed with Fibrillar and pressure was applied. TachoSil was then placed as bleeding was still noted. The TachoSil was said to have assisted in resolving the area to which it was applied; however, another area of bleeding from the spleen was noted. General surgery used an argon beam device to coagulate both bleeding areas of the spleen, which again was covered with Fibrillar and pressure was held for 10 minutes. The operative note stated that "[e]verything appeared hemostatic after this time. The area was sprayed with Tisseal (sic)"

10. Dr. Lindsay Friedman, the general surgeon called in to address the splenic bleeding, wrote in her intraoperative consultation note:

> We were called for an intraoperative consultation for splenic capsular bleeding. We discussed the risks and benefits of splenectomy. Ultimately we made progress achieving hemostasis with packing and pressure. After 40 minutes of pressure we reinspected the spleen and there were a couple of continued sites of oozing. We controlled these using argon beam coagulation, Fibrillar, and pressure. This was effective, as after 10 minutes of pressure using this approach the Fibrillar remained dry. *We decided the best course for the patient was to defer splenectomy and close the abdomen **knowing that there still remained a small chance of continued bleeding***.

11. The surgery is noted to have concluded at 1537hrs, and Mr. Soltes is noted to have left the operating room at 1546hrs "… awoken from anesthesia and transferred to the ICU in stable

5

conditions." The transfusion record indicates that Mr. Soltes was given 7 units of PRBC, 4 units of plasma and 1 unit of platelets intraoperatively. The estimated blood loss (EBL) from this surgery was recorded as 3800 mL. Dr. Kenigsberg's operative noted a conflicting EBL of 3500 mL.

12. When he arrived to the ICU at 1600, Mr. Soltes was initially determined to be hemodynamically stable. His first post-op hemoglobin at 1603 hrs. was 8.1 g/dL and his hematocrit was 24.2%. Coagulation labs drawn at the same time showed a PT of 17.3 seconds, aPTT >21.1 seconds, and a PT INR of 1.39. Mr. Soltes received 1u PRBC after arriving to the ICU. From that point Bryan Soltes' blood pressure for the most part, remained hypotensive, despite receiving fluids, PRBCs and phenylephrine. At 1920 hrs. the medical records indicate that Mr. Soltes received 7 units of PRBCs, 4 units FFP, 1 pack (6 units) of platelets. Repeat lab results obtained after Mr. Soltes received another unit of PRBC at 2018 hrs. revealed that his hemoglobin had dropped to 7.5 g/d and hematocrit dropped to 21.9% L. Mr. Soltes then received another PRBC transfusion. Mr. Soltes' hemoglobin continued to drop in the setting of active transfusion, fluid administration and medication to raise his blood pressure. His blood pressure, which fell to the 70s systolic at approximately 2100, recorded at 2130 as 67/51 by cuff. Repeat labs at 2221 obtained after that PRBC transfusion hemoglobin at 2221hrs. showed a further hemoglobin drop of 7.4 g/dL.

13. Mr. Soltes was returned to the operating room for hemodynamic instability despite fluid resuscitation and massive transfusion on April 19, 2025, at approximately 0000 hrs. for "damage control surgery" – an exploratory laparotomy for splenic bleeding. During that surgery, for which general surgery was consulted for "likely splenic bleeding," dark blood clots and approximately 500-1000 ccs of blood was noted in the surgical field. During the process of looking for active hemorrhage, Mr. Soltes suffered a PEA arrest, for which CPR and resuscitation were commenced. Return of

spontaneous circulation was achieved after some time. Mr. Soltes was returned to the ICU, intubated, for resuscitation and stabilization. The plan was to return him to the OR when he was stable enough for surgery to remove packing and perform splenectomy and/or other indicated procedures.

14. On April 19, 2024, an angiogram was performed which did not reveal any extravasation around noon, but revealed a distal splenic artery dilation consistent with a pseudo-aneurysm, which was embolized. The main splenic artery could not be embolized. Mr. Soltes was returned to ICU. He was hypertensive for which he was started on Nitroglycerin infusion with PRN Labetalol. He also required increasing FiO2 while on the ventilator. A chest X-ray revealed a right upper lung vs mucous plug. PEEP was titrated up to 10 and FiO2 was titrated up to 80%. Improved oxygenation with SpO2 98-100%. The CVVD rate, which had been initiated for acute renal failure, was increased to negative rate of 450cc/hr. due to concerns for volume overload and hypertension. Mr. Soltes' hemoglobin dropped from 9.2 to 8.4 and he was given 2u PRBC.

15. Mr. Soltes was returned to the OR on April 20, 2024, for a "washout." The decision was made at that time to perform splenectomy. Fresh oozing was noted, as well as the fact that there had been bloody chest tube output. The diaphragm defect was repaired at that time as well.

16. After the April 20, 2024, washout procedure and throughout the remainder of his hospitalization, Bryan Soltes remained intubated while being treated for, among other things, hemorrhagic shock, anuric acute kidney injury presumed to be secondary to acute tubular necrosis of hemorrhagic shock, acute hypoxic and respiratory failure. On April 23, 2024, an MRI of his brain revealed multiple discrete infarcts compatible with anoxic brain injury. His condition continued to decline until he expired on April 28, 2024. An autopsy performed on Bryan Soltes concluded that the immediate cause of his death was anoxic brain injury, congestive heart failure and splenic hemorrhage.

## COUNT ONE – WRONGFUL DEATH (MEDICAL NEGLIGENCE)

17. Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

18. Plaintiffs Jeanne H. Soltes, Grace E. Soltes, Abigail E. Soltes, D.S., John R. Soltes and Teresa Soltes bring this action pursuant to Maryland's Wrongful Death Act for the benefit of the surviving spouse, children, and parents of the decedent, all of whom are statutory beneficiaries under Md. Code, Courts & Judicial Proceedings § 3-904.

19. In this case, the United States of America (National Institutes of Health) through its actual and/or apparent agents, servants and/or employees, including Lindsay Friedman, M.D., and Nicholas Klemen, M.D., breached the standards of care of reasonably competent Health Care Providers by:

(a) Failing to perform splenectomy to address Bryan Soltes' injured and bleeding spleen at the time of his initial surgery in a patient with (1) cardiovascular risk factors, (2) inadequate cardiovascular reserve to cope with continued blood loss of the magnitude he experienced, and (3) higher risk for complications of hemorrhage and hemorrhagic shock from ongoing bleeding;

(b) for other reasons that may be found during the course of discovery of this matter.

20. As a direct and proximate cause of these departures from the standard of care by the NIH Health Care Providers, acting as the actual and/or apparent agents, servants, and/or employees of the United States of America, and without any negligence on the part of the Decedent, the Decedent's condition was not appropriately evaluated and treated and was a proximate cause of his death on April 28, 2025. A splenectomy performed at the time of surgery on April 18, 2024, when it was noted that the efforts at hemostatic control did not stop the splenic bleeding would have in all likelihood prevented the ongoing hemorrhage which lead to the Decedent's PEA arrest,

hemorrhagic shock, anuric acute kidney injury, acute hypoxic and respiratory failure, anoxic brain injury and resultant death.

21. Plaintiffs have all suffered non-economic damages and will continue to suffer non-economic damages. Plaintiff Jeanne H. Soltes lost her husband. Plaintiffs Grace E. Soltes, Abigail E. Soltes, and D.S., lost their father. Plaintiffs John R. Soltes and Teresa Soltes lost their son. As a result of the death of Bryan M. Soltes, Plaintiff Jeanne H. Soltes and her children incurred loss of past and future income, retirement and/or pension benefits, loss of household services, as well as other economic losses, and all Plaintiffs have incurred and will continue to incur a variety of non-economic damages including but not limited to mental anguish, emotional pain and suffering, loss of society, companionship, marital care, parental care, filial care, attention, advice, counsel, training and guidance, among other non-pecuniary losses.

WHEREFORE, as a result of the foregoing, the Plaintiffs respectfully demand judgment against the Defendant, the United States of America, for compensatory damages in excess of the jurisdictional limit, plus interest, costs and other permissible damages.

### COUNT TWO – SURVIVAL CLAIM (MEDICAL NEGLIGENCE)

22. Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

23. At all relevant times herein, Jeanne H. Soltes is Personal Representative of the Estate of Bryan M. Soltes.

24  As a direct and proximate result of these acts of negligence on the part of the United States of America (National Institutes of Health) through its actual and/or apparent agents, servants and/or employees, including Lindsay Friedman, M.D. and Nicholas Klemen, M.D. Plaintiff The Estate of Bryan M. Soltes incurred lost medical expenses and funeral expenses. Furthermore,

Bryan M. Soltes sustained conscious physical, mental and emotional pain, anguish, and suffering between the time of the negligence and the time of his death.

WHEREFORE, as a result of the foregoing, the Plaintiffs respectfully demand judgment against the Defendant, the United States of America, for compensatory damages in excess of the jurisdictional limit, plus interest, costs and other permissible damages.

Respectfully submitted,

*SHADOAN, MICHAEL & WELLS, LLP*


/s/ Gregory K. Wells
Gregory K. Wells
108 Park Avenue
Rockville, MD 20850
gwells@smwlawfirm.com
(301) 762-5150 (phone)
(301) 309-8344 (fax)
Fed. Bar: 03123
AIS: 8506010364


/s/ Andrew J. Hall
Andrew J. Hall
108 Park Avenue
Rockville, MD 20850
ahall@smwlawfirm.com
(301) 762-5150 (phone)
(301) 309-8344 (fax)
Fed. Bar: 18980
AIS: 1112130396

*Attorneys for Plaintiffs*